*10*

FILED

OCT 2 2 2009

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

FOR  PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                             )      Case No.  09-12534-B-13
                                                      )
Kenneth Harris                                )      DC No. SAH-4
Susan Harris,                                   )      DC No. MHM-1
                                                      )
                    Debtors.                  )
                                                      )
_____)

## MEMORANDUM DECISION REGARDING MOTION
## TO CONFIRM FIRST MODIFIED CHAPTER 13 PLAN

Susan A. Hemb, Esq., appeared on behalf of the debtors, Kenneth and Susan Harris (the "Debtors").

Michael H. Meyer, Esq., appeared in his capacity as the chapter 13 trustee (the "Trustee").

Before the court is the Debtors' motion to confirm a first modified chapter 13 plan (the "Plan").  The Trustee objects to confirmation (the "Objection") on the grounds that the Plan does not provide for all of the Debtors' projected disposable income to be applied to make payments to unsecured creditors in compliance with 11 U.S.C. §1325(b)(1)(B).[1]  Specifically, the Trustee objects because the Debtors deducted $650 per month on line 40 of their Chapter 13 Statement of Current

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23 (BAPCPA).

*84*

1    Monthly Income and Calculation of Commitment Period and Disposable Income

2    (Official Form 22C, the "Means Test"). The deduction represents money they

3    contribute to the support of their adult daughter (the "Student") while she attends

4    college and lives away from home (the "Student Deduction"). The Trustee

5    contends, based on the language of the underlying statute, subsection

6    707(b)(2)(A)(ii)(II) (sometimes referred to as the "Statute"), that the Student

7    Deduction is not available because the Student is not "elderly, chronically ill, or

8    disabled." If the Student Deduction is disallowed, then the Debtors' "projected

9    disposable income" would substantially increase. The Debtors disagree with the

10   Trustee's interpretation of the Statute and argue that the Student Deduction may be

11   allowed as the reasonable and necessary support of an "immediate family member."

12   For the reasons set forth below, the court is persuaded that the Trustee's

13   interpretation of subsection 707(b)(2)(A)(ii)(II) is correct in so far as whether some

14   support for the Student is allowable on line 40 of the Means Test.[2] The Objection

15   will be sustained.

16       This memorandum contains findings of fact and conclusions of law required

17   by Federal Rule of Civil Procedure 52 (made applicable to this contested matter by

18   Federal Rule of Bankruptcy Procedure 7052). The bankruptcy court has jurisdiction

19   over this matter pursuant to 28 U.S.C. § 1334 and §§ 1301, et seq. and General

20   Orders 182 and 330 of the U.S. District Court for the Eastern District of California.

21

22       [2]The Debtors did not count the Student for the purposes of determining their household

23   size, the median family income, and the related expenses allowable in part IV of the Means Test.
     However, the Debtors contend that the Student is a dependent on their income tax returns and

24   that they would be entitled to take a deduction for her as a member of the Debtors' household for

25   the purpose of computing the monthly expenses under the National and Local Internal Revenue
     Standards. Those expenses would include food, clothing, housing, utilities, household supplies,

26   personal care, telephone, transportation, and miscellaneous living expenses. The court is not

27   saying here that some deduction for support of the Student may not be allowed elsewhere on the
     Means Test if she is a legal dependent. However, that issue is not before the court. The

28   Trustee's Objection relates specifically to line 40 of the Means Test.

2

1   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

2   **Background and Findings of Fact.**

3       The Debtors filed their chapter 13 petition on March 26, 2009. Both Debtors

4   are employed. The Debtors' Means Test calculates their annualized current monthly

5   income ("CMI") to be $118,071, which substantially exceeds the median family

6   income for a family of four in California. Thus, the Debtors are directed to

7   §§ 1325(b)(3) and 707(b)(2) for the rules that determine the "projected disposable

8   income" available to pay their unsecured creditors. The Debtors' Means Test

9   calculates the monthly disposable income to be $190.34. The Plan has a 60-month

10  commitment period and proposes to pay a 3.29% dividend, about $9,950, on

11  unsecured claims that total $302,453. If the Student Deduction is not allowed, the

12  Trustee contends that the Debtors have the ability to pay substantially more to

13  unsecured creditors.

14      The Debtors list two dependents on schedule I, daughters ages 21 and 16, for

15  a household size of four. The Debtors have a third adult child, the Student, who is a

16  full-time student living at a four-year college in Fresno, California, approximately

17  an hour drive from the Debtors' home. There is no evidence to suggest that the

18  Student is elderly, chronically ill, or disabled. It appears that she has sufficient

19  financial resources such that the only support required from the Debtors is the $650

20  which they claimed as a deduction on line 40 of the Means Test.

21  **The Applicable Law.**

22      Bankruptcy Code § 1325(b)(1)(B) states in pertinent part that if the chapter

23  13 trustee or an unsecured creditor objects to confirmation, then the court may not

24  approve the plan unless, as of the effective date of the plan, either unsecured

25  creditors get paid in full or:

26  / / /

27  / / /

28  / / /

3

> [T]he plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan. (Emphasis added.)

For a family with annualized CMI above the applicable median, the term "disposable income" is defined in §§ 1325(b)(2) & (3), which specifically incorporate the deductions allowed in § 707(b)(2):

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor . . . less *amounts reasonably necessary* to be expended -
>
> (A)(I) for the maintenance or support of the debtor or a dependent of the debtor . . . .
> . . .
>
> (3) *Amounts reasonably necessary* to be expended under paragraph (2), . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than [the applicable median family income]. (Emphasis added.)

In this case, because the Debtors' annualized CMI is greater than the applicable median family income, their "reasonably necessary" deductions for maintenance or support must be determined with reference to § 707(b)(2). The deduction at issue here falls under subsection 707(b)(2)(A)(ii)(II) which provides:

> In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an **elderly, chronically ill, or disabled** household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses. (Emphasis added.)

## Issue Presented.

In this case, the court is required to interpret the meaning of the Statute, subsection 707(b)(2)(A)(ii)(II). The parties submitted to the court and briefed only the legal question: Is the deduction allowed under the Statute on line 40 of the

4

1    Means Test limited to support for "elderly, chronically ill or disabled" persons? The

2    Trustee argues that it is so limited. The Debtors contend, based on the construction

3    of the Statute, and the placement of the conjunction "or" before the term "member

4    of the debtor's immediate family," that the Statute defines two separate groups of

5    persons for whom support may be deductible. They argue that the "elderly,

6    chronically ill, or disabled" qualification applies only to members of the Debtors'

7    household, and not to other immediate family members who may live away from the

8    household, such as the Student.[3]

9    **Analysis and Conclusions of Law.**

10    The facts in the case are not disputed. This decision turns upon the statutory

11    construction of subsection 707(b)(2)(A)(ii)(II) which allows the Debtors to deduct,

12    from their gross monthly income, the reasonable and necessary cost to support

13    certain defined members of the household and immediate family. Resolution of a

14    dispute over the meaning of a statute begins with the language of the statute itself.

15    Where statutory language is plain, "the sole function of the courts–at least where the

16    disposition required by the text is not absurd–is to enforce it according to its terms. .

17    . . Courts must give meaning to every clause and word of a statute." *Maney v.*

18    *Kagenveama (In re Kagenveama)*, 541 F.3d 868, 872 (9th Cir. 2008) (citations

19    omitted).

20    Numerous courts have wrestled with the "family member," and specifically

21    the "college student" support issues since the enactment of BAPCPA because they

22    call to question the tension between a debtor's perceived moral responsibility to

23    members of the family and legal responsibility to creditors. One bankruptcy court

24

25    _____

26    [3]Based on the same argument, the Debtors also contend that the qualifying term "who is unable to pay for such reasonable and necessary expenses" only applies to the second group of

27    persons in the Statute, immediate family members. Again, the Trustee's objection applies only to application of the "elderly, chronically ill, or disabled" term. The Student's ability to pay for her

28    own support is not before the court.

5

1  recently considered the issue in a chapter 13 case and found that support for college

2  students was not warranted under the Bankruptcy Code. *In re Goins*, 372 B.R. 824

3  (Bankr. D.S.C. 2007). The *Goins* court looked to subsection 707(b)(2)(A)(ii)(IV),

4  which specifically allows a means test deduction of the reasonable and necessary

5  "actual expenses for each dependent child less than 18 years of age, not to exceed

6  $1,500 per year per child, to attend a private or public elementary or secondary

7  school." The *Goins* court reasoned that by expressly including a deduction for pre-

8  college students under the age of 18, Congress specifically excluded educational

9  expenses for students over the age of 18 from being "reasonable and necessary";

10         Educational expenses for students over the age of eighteen (18)
       and college expenses generally are no longer within the scope

11         of "reasonable and necessary" expenses contemplated by the
       Bankruptcy Code. Because Congress expressed that debtor's

12         expenses may include those of children under the age of
       eighteen (18) to attend elementary or secondary school,

13         expenditures for children over the age of eighteen (18) and
       those outside the elementary or secondary school context are

14         excluded.

15  *Id.* at 826-27.

16       Another court looked at a related issue in a chapter 7 case (support for

17  college-age children and the question of "abuse") based on the "totality of the

18  circumstances" under subsection 707(b)(3)(B). *In re Walker*, 383 B.R. 830 (Bankr.

19  N.D. Ga. 2008). The debtors in *Walker* tried to deduct on their means test

20  substantial costs associated with supporting two adult children in college. Citing

21  numerous other cases, the court noted generally that supporting college-age children

22  is "admirable when parents have the means to do so. However, . . . supporting adult

23  children at the expense of unsecured creditors is not permissible." *Id.* at 838.

24  Finding that the *Walker* case was an abuse of chapter 7, the court commented:

25         The Debtors have no legal obligation to support Timothy and
       Matthew, who are now able-bodied adults. The Debtors

26         propose to shift the use of their income from paying their own
       obligations to enable their adult children to attend college full

27         time without the burden of working to support themselves. . . .
       Permitting a discharge in this case would be an abuse, as the

28         Debtors are not needy.

6

1    *Id.* at 838-39.

2        The *Walker* court also rejected the debtors' argument that they could propose

3    a 0% dividend plan in chapter 13 and still pay nothing to their creditors.  The court

4    noted that "good faith" is a factor which must be considered in chapter 13:

5            [T]hese debtors are eligible to be debtors under chapter 13
         should they decide to convert their case.  Based on their current
6         budget, they are *capable* of proposing a meaningful dividend to
         unsecured creditors.  They will be entitled and required to
7         propose a plan that deals fairly and in good faith with their
         secured and unsecured creditors.
8

9    *Id.* at 839 (emphasis in original).

10        The Ninth Circuit Bankruptcy Appellate Panel has recently proclaimed that

11    no deduction should be allowed under § 707(b)(2) unless it first passes the

12    "reasonably necessary" test set forth in subsections 1325(b)(2) & (3).  *Yarnal v.*

13    *Martinez (In re Martinez)* ___ B.R. ___, 2009 WL 3338405 (9th Cir. BAP 2009) and

14    *American Express Bank FSB v. Smith (In re Smith)* ___ B.R. ___, 2009 WL

15    3338406 (9th Cir. BAP 2009).  (Both hold that subsections 1325(b)(2) and (b)(3)

16    must be read sequentially in a two-part inquiry.  Each proposed means test

17    deduction must first be reasonably necessary to a debtor's and/or dependant's

18    maintenance and support.  Only then should the court look to § 707(b)(2) and its

19    sub-parts to determine the proper *amount* of the deduction.)

20        The analysis in *Goins* and *Walker*, coupled with the holdings in *Martinez and*

21    *Smith*, would support a ruling in favor of the Trustee based solely on the

22    reasonableness and necessity of the Student Deduction and it would be easy to stop

23    there.  However, the *Goins* and *Walker* decisions focus on deductions for the

24    support of college-age students generally.  Those decisions leave unanswered the

25    specific question raised here.  For the purpose of this Objection, the Trustee does

26    not contend that the Student Deduction is unreasonable or unnecessary.  Neither

27    does he contend that the Student is able to support herself.  The Debtors and the

28    Trustee have asked this court to address a specific question:  What is the proper

7

1   construction of subsection 707(b)(2)(A)(ii)(II) and does it have any application

2   generally to persons who are not "elderly, chronically ill, or disabled"?

3       After due consideration for both sides of the argument, the court agrees with

4   the Trustee's interpretation of the Statute.  Identical arguments were made by the

5   U.S. Trustee and the debtor in the chapter 7 case *In re Hicks*, 370 B.R. 919 (E.D.

6   Mo. 2007).  The Bankruptcy Code allows the same disputed deduction to be taken

7   on line 35 of the chapter 7 means test.  Noting that the question was one of first

8   impression, the *Hicks* court analyzed the syntax of the Statute to conclude that the

9   qualifying terms "elderly, chronically ill, or disabled" and "who is unable to pay for

10  such reasonable and necessary expenses" apply to *both* sets of defined persons, i.e.,

11  members of the household *and* members of the immediate family:

12          The Debtor's reading of Line 35 (and, by extension, the nearly
13          identical language of § 707(b)(2)(A)(ii)(II)) is unmeritorious.
            First, both Line 35 and § 707(b)(2)(A)(ii)(II) are unambiguous:
14          there is only one indefinite article ("an") preceding the
            compound adjective phrase in the prepositional phase [sic] "of
15          an elderly, chronically ill, or disabled member of your
            household [household member] or member of your [the
16          debtor's] immediate family".  Had it been intended for "elderly,
            chronically ill, or disabled" to define only "member of your
17          household [household member]," and for "member of your [the
            debtor's] immediate family" to be independent from that
18          preceding adjective phrase, there would be a second indefinite
            article ("a") preceding "member of your [the debtor's]
19          immediate family."  Moreover, by this same use of one, not
            two, indefinite articles, the adjective clause "who is unable to
20          pay for such reasonable and necessary expenses" refers to both
            "member of your household [household member]" and
21          "member of your [the debtor's] immediate family," not only to
            the latter.  Again, had the intent been otherwise, Congress
22          could have employed an additional "a" to convey precisely
            such limitation: ". . . an elderly, chronically ill, or disabled
23          household member or *a* member of the debtor's immediate
            family . . . who is unable to pay for such reasonable and
24          necessary expenses."  Without this additional indefinite article,
            the plain reading of the statute directs this Court  to interpret
25          the clause "who is unable to pay for such reasonable and
            necessary expenses" as modifying both "member of your
26          household [household member]" and "member of your [the
            debtor's] immediate family."  As such, the Debtor's
27          interpretation of the statute is unsustainable.

28  *Id.* at 922 (alteration and emphasis in original).

8

1   Based on this interpretation, the *Hicks* court defined the elements of the
2   Statute as follows:  "(1) the expenses must be a continuation of actual expenses paid
3   by the debtor; and (2) the expenses must be reasonable and necessary for care and
4   support of an elderly, chronically ill, or disabled: (a) household member who is
5   unable to pay for such expenses; or (b) member of the debtor's immediate family (as
6   defined by the statute) who is unable to pay for such expenses."  *Id.* at 922-23.

7   The following passage from the *Hicks* decision also illustrates why the
8   Trustee's interpretation of subsection 707(b)(2)(A)(ii)(II) is not absurd.  The *Hicks*
9   court examined the debtors' interpretation of the Statute in light of the underlying
10  public policy:

11          If a debtor is willing to financially support those in a close
            relationship to him who are elderly, ill, or disabled and cannot
12          support themselves, such debtor will not be imputed with
            disposable income that actually is spent on providing such
13          support.  However, the Debtor's interpretation of the Line 35
            and § 707(b)(2)(A)(ii)(II) would allow a debtor to include
14          expenses for an elderly, ill, or disabled "member of the
            household," regardless of whether that member is able to pay
15          for such expenses.  Such an interpretation would allow a debtor
            to financially support, on the backs of his creditors, a member
16          of the household who is fully capable of self-support.

17  *Id.* at 922.

18  Part of the difficulty here lies in the language of the Means Test form itself.
19  Line 40 of Form 22C is worded slightly different than the Statute.  Line 40 states:

20          **Continued contributions to the care of household or family
            members**.  Enter the total average actual monthly expenses that
21          you will continue to pay for the reasonable and necessary care
            and support of an elderly, chronically ill, or disabled member of
22          your household or member of your immediate family who is
            unable to pay for such expenses.  (Emphasis in original.)
23

24  By transposing the words "household member" into "member of your household"
25  immediately following the word "disabled," and deleting the hanging "and" before
26  the term "who is unable to pay," Form 22C, on its face, would arguably appear to
27  support the Debtors' interpretation.  However, the Official Forms used in a
28  bankruptcy case are promulgated by the Judicial Conference of the United States

9

and must be construed to be consistent with the Bankruptcy Code. Fed.R.Bankr.P. 9009. The Official Forms do not have the force of substantive law. When the wording of an Official Form varies from the language of the underlying statute, the statute controls. *In re Rahman*, 400 B.R. 362, 368 n.10 (Bankr. E.D.N.Y. 2009).

**Conclusion.**

Based on the foregoing, the Trustee's Objection to confirmation will be sustained. The chapter 13 Debtors' contribution to the support of a family member may not be deducted from the Debtors' CMI on line 40 of the Means Test unless that person is both "elderly, chronically ill, or disabled" and "unable to pay for such expenses." The Debtors' Plan does not appear to devote all of the CMI to the payment of unsecured creditors and it cannot be confirmed.

Dated: October _22_, 2009

W. Richard Lee
United States Bankruptcy Judge

10